UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT BUCHANAN,<br>　　　　Plaintiff,<br>　v.<br>ARAMARK CAMPUS, LLC, et al.,<br>　　　　Defendants. | Case No.19-cv-00384-VKD<br><br>**ORDER REMANDING CASE TO STATE COURT**<br>Re: Dkt. Nos. 24, 25 |

Plaintiff Robert Buchanan sues for himself and on behalf of a putative class (and several subclasses) claiming that defendants Aramark Campus, LLC and Aramark Sports, LLC committed wage and hour violations contrary to various provisions of the California Labor Code. According to his complaint, Mr. Buchanan was employed by defendants for several years, first as a concessions worker, and then as a concessions supervisor, at defendants' facilities and in connection with their operations at the SAP Center in San Jose, California. Essentially, Mr. Buchanan claims that defendants did not pay him for hours worked beyond his scheduled shift hours; did not permit him to take legally required meal and rest breaks; failed to maintain and provide accurate wage statements; and did not timely pay all wages due upon termination of employment. The putative class members are individuals who, at any time from four years prior to the filing of this lawsuit, were "employed as non-exempt, hourly concessions managers in connection with the concessions operations and services Defendants provide at facilities and venues within the State of California." Dkt. No. 1-1 ¶ 37.

For the reasons discussed below, the Court determines that it lacks federal diversity jurisdiction over this action.

## I. BACKGROUND

Mr. Buchanan filed this action in the Santa Clara County Superior Court on December 10, 2018, asserting nine claims for relief: (1) failure to pay minimum wages, Cal. Labor Code §§ 204, 1194, 1197; (2) failure to pay wages and overtime, Cal. Labor Code § 510; (3) meal period liability, Cal. Labor Code § 226.7; (4) rest-break liability, Cal. Labor Code § 226.7; (5) failure to provide accurate, itemized wage statements, Cal. Labor Code § 226(a); (6) failure to pay for all hours worked, Cal. Labor Code § 221; (7) failure to timely pay all wages earned, Cal. Labor Code § 204; (8) failure to timely pay all wages due at termination, Cal. Labor Code § 203; and (9) unlawful and unfair business practices, Cal. Bus. & Prof. Code § 17200, *et seq*. Dkt. No. 1-1.

Defendants answered Mr. Buchanan's complaint on January 18, 2019 and subsequently removed the matter here on January 22, 2019, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). Dkt. No. 1. On February 14, 2019, Mr. Buchanan filed a First Amended Complaint ("FAC"), adding a representative claim under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698, *et seq*., which provides for civil penalties stemming from defendants' alleged conduct that violates the California Labor Code. Dkt. No. 13. The FAC acknowledges, but does not endorse, defendants' assertion that diversity jurisdiction exists. *Id*. ¶ 9. Defendants answered the FAC. Dkt. No. 15.

In the parties' joint case management statement (Dkt. No. 18), defendants advised that on January 7, 2019, in connection with a matter pending before the California Division of Labor Standards Enforcement, Mr. Buchanan signed a general release of all claims against them. Defendants contend that the release extinguished Mr. Buchanan's claims in the present suit and that this action therefore should be dismissed. Mr. Buchanan's counsel does not deny that Mr. Buchanan signed a release, although counsel questions the circumstances under which that release was obtained and suggests that the release was the product of overreaching by defendants. Additionally, counsel claims that Mr. Buchanan did not notify him about that release and that defendants said nothing about it until shortly before the scheduled April 23, 2019 initial case management conference before this Court. In any event, Mr. Buchanan's counsel requests

permission to conduct early discovery in order to find a new plaintiff. Defendants objected to Mr. Buchanan's request for such discovery.

The Court directed the parties to brief the propriety of defendants' removal to this Court and Mr. Buchanan's standing to pursue this action, including:

1. How the relief sought by the complaint (including any attorney's fees) should be measured for purposes of establishing the $75,000 amount-in-controversy threshold for diversity jurisdiction, where at the time of removal, the removing party has knowledge of bases for potential dismissal of the action; and

2. Whether there is a genuine dispute of material fact regarding the validity or enforceability of the release at issue, and if so, whether discovery is necessary and sufficient to resolve the dispute.

Dkt. No. 23. The parties timely submitted their briefs, and the Court held a hearing on the matter on June 4, 2019. Defendants maintain that they properly removed this action based on diversity jurisdiction, and that this matter must be dismissed in view of Mr. Buchanan's general release. Mr. Buchanan does not dispute that complete diversity of citizenship exists. However, he contends that this matter must be remanded to the state court because defendants have not met their burden to establish that the amount in controversy exceeds the $75,000 threshold. Assuming the Court has diversity jurisdiction over this case, the parties disagree whether Mr. Buchanan may pursue the PAGA claim. Upon consideration of the papers submitted, as well as the arguments of counsel, the Court concludes that defendants have not met their burden to establish that diversity jurisdiction exists and therefore remands this matter to the state court.[1]

**II. DISCUSSION**

**A. Diversity Jurisdiction**

Federal district courts have diversity jurisdiction over civil actions in which the matter in

---

[1] Mr. Buchanan and both defendants have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. The consent of absent class members is not required for the undersigned to exercise jurisdiction over this matter. *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017).

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a). Diversity jurisdiction is measured at the time a lawsuit is filed. *See generally Grup Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004). Removal to federal court is proper where the federal court would have original subject matter jurisdiction over the complaint. 28 U.S.C. § 1441. The removal statutes are strictly construed against removal and place the burden on defendants to demonstrate that removal is proper. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Additionally, the Court has a continuing duty to determine whether it has subject matter jurisdiction. Fed. R. Civ. P. 12(h). A case must be remanded to the state court if it appears at any time before final judgment that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

### B. Amount in Controversy

Because the amount in controversy is not evident from the face of Mr. Buchanan's pleadings, defendants must prove, by a preponderance of the evidence, that the jurisdictional threshold is met. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). "Under this burden, the defendant[s] must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *Sanchez*, 102 F.3d at 404 (internal quotations and citations omitted). To discharge their burden, defendants must do more than present speculation or conclusory allegations. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The Court may consider the complaint, facts presented in the removal petition, and any summary-judgment type evidence relevant to the amount in controversy at the time of removal. *Fritsch*, 899 F.3d at 793; *Valdez*, 372 F.3d at 1117 (internal quotations and citation omitted). For purposes of evaluating jurisdiction, the Court considers Mr. Buchanan's original complaint and not his amended complaint.

According to defendants, Mr. Buchanan was employed for approximately 157 workweeks from November 18, 2014 through December 10, 2017. Dkt. No. 1; Dkt. No. 3 ¶ 3. Although Mr. Buchanan's filings present slightly different dates of employment (Dkt. No. 1-1 ¶ 13; Dkt. No. 18

at ECF 3), he does not dispute defendants' estimated period of his employment. The complaint alleges that Mr. Buchanan generally worked four or five days per week, depending on events at his assigned location, for 9 or 9.5-hour shifts from 1:30 p.m. to 10:30 p.m. or 11:00 p.m. Dkt. No. 1-1 ¶¶ 14, 21. Based on the Labor Code violations alleged in Mr. Buchanan's original complaint, including estimated attorneys' fees through trial, defendants contend that the amount in controversy is at least $252,919.40. Of that amount, defendants estimate $55,312.40 in damages and penalties for Mr. Buchanan's individual claims, and nearly $200,000 in attorneys' fees.[2] Dkt. Nos. 1, 24. Mr. Buchanan argues that defendants' estimates are overstated and are based on speculative and unsupported assumptions.

### 1. Estimated Damages

#### a. Overtime and Minimum Wage Claims

An employer must timely pay employees at least the then-applicable minimum wage for all hours worked. Cal. Labor Code §§ 204, 1194, 1197. For Mr. Buchanan's overtime and minimum wage claims, defendants estimate damages of $21,777.40. Defendants' estimate is based primarily on paragraph 16 of the original complaint in which Mr. Buchanan alleges that he (and putative class members) "generally work[ed] at least 15-20 minutes off the clock before and after timekeeping entries and during the hours they were compelled to work by remaining under Defendants' control during meal and rest breaks." Dkt. No. 1-1 ¶ 16. Defendants interpret this allegation to mean that Mr. Buchanan worked off the clock for at least two 15-20 minute periods per shift, for a total of 40 minutes of off-the-clock work per shift. Using Mr. Buchanan's $18.50 hourly wage rate at the time of his termination,[3] defendants calculate his estimated overtime wages

---

[2] In their Notice of Removal, defendants estimated 200 hours to litigate this matter through trial, for a total of $132,000 in fees. Dkt. No. 1 at ECF 12. In their present briefing, and based on a recalculation of fees based on an allocation of hours for various tasks and phases of litigation, defendants now estimate 298.5 hours to litigate this matter through trial, for a total of $197,607 in fees. Dkt. No. 24 at ECF 12. Because defendants' supplemental brief presents a more detailed analysis of defendants' fee estimate, the Court will focus on that analysis here.

[3] It is unclear whether this is the rate Mr. Buchanan was paid for the entire period of his employment, including when he initially worked as a concessions worker before becoming a concessions supervisor.

5

earned off-the-clock to be $14,595.[4] Based on the various minimum wage rates in effect in California during Mr. Buchanan's period of employment, defendants estimate damages for his minimum wages claim to be $3,591.20, plus liquidated damages of $3,591.20,[5] for a total of $7,182.40.[6]

While Mr. Buchanan's allegation plausibly could be read to mean that he and other putative class members worked a total of 40 minutes off the clock per shift, Mr. Buchanan says that his allegation means that off-the-clock work totaled only 15-20 minutes per shift. Dkt. No. 25 at ECF 8. He does not otherwise challenge defendants' proffered calculations. Accordingly, he says that his estimated individual damages for this alleged violation should be reduced by at least half. Defendants having offered no convincing argument to the contrary, the Court agrees with Mr. Buchanan's estimate of the amount of off-the-clock work. Applying defendants' calculations to 20 minutes (0.33 hours) of off-the-clock work per shift,[7] including liquidated damages, yields **$10,726.24**.

### b. Meal and Rest Break Claims

As for his meal and rest break claims, Mr. Buchanan argues that defendants' $29,045 damages estimate is similarly overstated. Defendants' estimate appears to be based on an

---

[4] $18.50 hourly rate x 1.5 (time and a half) x 0.67 hours (40 minutes) x 5 workdays x 157 workweeks = $14,595

[5] "In any action under [California Labor Code] Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Labor Code § 1197.2.

[6] For off-the-clock hours worked in 2015: $9.00 hourly rate x 0.67 off-the-clock hours x 5 workdays x 3 workweeks = $90.45. For off-the-clock hours worked in 2016: $10.00 hourly rate x 0.67 off-the-clock hours x 5 workdays x 52 workweeks = $1,742. For off-the-clock hours worked in 2017: $10.50 hourly rate x 0.67 off-the-clock hours x 5 workdays x 50 workweeks = $1,758.75.

[7] Mr. Buchanan's overtime claim: $18.50 hourly rate x 1.5 (time and a half) x 0.33 hours (20 minutes) x 5 workdays x 157 workweeks = $7,188.64.

Mr. Buchanan's minimum wage claim: For off-the-clock hours worked in 2015: $9.00 hourly rate x 0.33 off-the-clock hours x 5 workdays x 3 workweeks = $44.55. For off-the-clock hours worked in 2016: $10.00 hourly rate x 0.33 off-the-clock hours x 5 workdays x 52 workweeks = $858. For off-the-clock hours worked in 2017: $10.50 hourly rate x 0.33 off-the-clock hours x 5 workdays x 50 workweeks = $866.25. Total: $1,768.80.

1 assumption that for each shift he worked, Mr. Buchanan missed at least one meal break and one
2 rest break. Dkt. No. 1 at ECF 7-8. Defendants further assert that Mr. Buchanan "could recover
3 potentially a premium equal to one hour of pay for each meal period and rest break that
4 purportedly was not provided." *Id*. at ECF 8. Multiplying Mr. Buchanan's hourly rate at the time
5 of his termination by 157 workweeks across five meal periods per week (i.e., $18.50 hourly rate x
6 157 workweeks x 5 meal period hours), defendants contend that Mr. Buchanan's damages would
7 be $14,522.50 for missed meal breaks, plus an additional $14,522.50 for missed rest breaks, for a
8 total of $29,045. *Id*.

Mr. Buchanan's complaint seems to treat his shifts and workdays interchangeably, and it may reasonably be inferred from his allegations that he worked only one shift per workday. The complaint's allegations indicate that Mr. Buchanan worked five *shifts* per week, and also indicate that he generally was scheduled to work four or five *days* per week. *See, e.g.* Dkt. No. 1-1 ¶¶ 14, 21, 22. Under different circumstances, this discrepancy would be potentially significant because California Labor Code section 226.7 provides that an "employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each *workday* that the meal or rest or recovery period is not provided." Cal. Labor Code § 226.7(c) (emphasis added). Courts have interpreted this provision to mean that an employee may recover up to two additional hours of pay "per *workday*—one for failure to provide one or more meal periods, and another for failure to provide one or more rest periods." *United Parcel Service Inc. v. Super. Ct.*, 196 Cal. App. 4th 57, 69 (2011) (emphasis added); *see also Marquez v. NLP Janitorial, Inc.*, No. 16-cv-06089-BLF, 2019 WL 652866, at *7 (N.D. Cal., Feb. 15, 2019) (same). Thus, Mr. Buchanan's damages are not calculated based on the number of breaks he allegedly missed, but rather on the number of workdays on which Mr. Buchanan allegedly was unable to take one or more meal or rest breaks.

Defendants' estimated damages do not appear to run afoul of this rule, notwithstanding their suggestion that Mr. Buchanan may recover a premium payment for each alleged missed meal or rest break. As discussed, the complaint refers to shifts and workdays interchangeably and defendants' calculations give Mr. Buchanan no more than two premium payments per shift.

7

Nevertheless, Mr. Buchanan argues that the estimated damages should again be reduced by at least half. Here, he correctly notes that defendants have provided no basis for their assumption that he missed one meal break and one rest break for every shift he worked each week. The complaint alleges that Mr. Buchanan missed meal periods on "at least two (2) shifts out of five (5) in a work week" and that "[s]imilar violations resulted" from defendants' alleged failure to permit 10-minute rest breaks for every four hours of shift work. Dkt. No. 1-1 ¶¶ 22, 27. Defendants have proffered no evidence that Mr. Buchanan missed meal or rest breaks on any more than two shifts per week, let alone on all five shifts. Based on the complaint's allegations, and assuming that Mr. Buchanan missed at least one meal and one rest period on two workdays per workweek, Mr. Buchanan's estimated damages would be $5,809 for his meal period claim (i.e., $18.50 hourly rate x 2 workdays x 157 workweeks), plus an additional $5,809 for his rest period claim (i.e., $18.50 hourly rate x 2 workdays x 157 workweeks), for a total of **$11,618**.

### c. Accurate Wage Statements

Mr. Buchanan claims that defendants violated California Labor Code section 226(a) by failing to provide wage statements that accurately accounted for wages and overtime, as well as any premiums due for missed meal and rest breaks. The failure to comply with section 226(a) entitles an employee "to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars." Cal. Labor Code § 226(e)(1). Mr. Buchanan's complaint seeks statutory penalties, rather than actual damages under section 226(e). Dkt. No. 1-1 at ECF 38. He does not challenge defendants' assertion that a one-year statute applies, *see* Cal. C.C.P. § 340(a), or their contention that he worked only one period within the relevant limitations period, for a total penalty of **$50**.

### d. Waiting Time Penalties

Mr. Buchanan alleges that defendants failed to pay him all wages due and owing for more than 30 days from the end of his employment. Dkt. No. 1-1 ¶ 104. "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201(a). If an employer willfully fails to immediately pay such

8

wages, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," up to a maximum penalty of 30 days of wages. *Id*. § 203(a). Based on Mr. Buchanan's allegations that defendants' failure to make timely payment continued for more than 30 days after the end of his employment, defendants estimate his damages to be **$4,440**, i.e., $18.50 hourly rate x 8 hours per workday x 30 days. Mr. Buchanan does not dispute this calculation.

In sum, with the deductions described above, Mr. Buchanan's estimated damages for purposes of calculating the amount in controversy totals **$26,834.24**. Accordingly, defendants must establish that it is more likely than not that Mr. Buchanan's claims for attorneys' fees will exceed $48,165.76 in order to satisfy the $75,000 jurisdictional threshold.

### 2. Attorneys' Fees

With respect to Mr. Buchanan's request for attorneys' fees, there are two matters that are not disputed. First, it is well established that "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). It is undisputed that Mr. Buchanan seeks relief under various statutes that authorize an award of reasonable attorneys' fees to a prevailing employee, *see, e.g.*, Cal. Labor Code §§ 226, 1194, and that at least *some* amount of fees should be included in the amount in controversy.[8]

Second, although defendants contend that Mr. Buchanan's claims are subject to immediate dismissal in view of his general release, the parties agree that defendants' defense based on that release does not impact the analysis of the amount in controversy. The Ninth Circuit has suggested that courts should consider whether a fee estimate is too speculative because of the likelihood of a prompt settlement. *Fritsch*, 899 F.3d at 795 ("Moreover, we are confident that district courts are well equipped to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate is too speculative because of

---

[8] It is not clear whether defendants' fee calculations account for Mr. Buchanan's meal and rest break claims for which, apparently, no fee award is authorized. *See Fritsch*, 899 F.3d at 796 (citing *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1255 (2012)).

9

the likelihood of a prompt settlement.") At oral argument, Mr. Buchanan's counsel confirmed that with respect to Mr. Buchanan's individual claims, Mr. Buchanan will not seek to invalidate the release or to unwind that agreement in any way. Dkt. No. 29. Nevertheless, Mr. Buchanan continues to dispute the enforceability of the subject release with respect to the PAGA claim added to Mr. Buchanan's FAC. *Id*. Moreover, defendants note that, up until the June 4 hearing on this matter, Mr. Buchanan continued to assert that the release was invalid and would not agree to dismiss his claims. *See Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("As the Supreme Court has explained, 'the fact that the complaint discloses the existence of a valid defense to the claim' does not eliminate federal jurisdiction, nor do events 'occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit.' This rule makes sense; just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense.") (quoting *St. Paul Mercury Indemnity Co.*, 303 U.S. 283, 289-90 (1938); *Pugh v. Metropolitan Life Ins. Co.*, No. 18-cv-01506-YGR, 2019 WL 484279, at *4 (N.D. Cal., Feb. 7, 2019) (treating a release as an affirmative defense for purposes of assessing the amount in controversy in determining jurisdiction).

Defendants maintain that the $75,000 jurisdictional threshold is exceeded by Mr. Buchanan's claim for attorneys' fees alone. They estimate that it will take approximately 298.5 hours to litigate Mr. Buchanan's individual claims. Using a blended average of Mr. Buchanan's counsel's hourly rates used in other litigation (i.e., $662 per hour), defendants contend that the fees to litigate Mr. Buchanan's claims through trial here will total $197,607. Dkt. No. 24 at ECF 10-12. Although Mr. Buchanan's counsel claims that other litigation from which defendants obtained their hourly rates was far more complex than the present matter,[9] Mr. Buchanan does not dispute the accuracy of the identified hourly rates or the use of a blended average rate. Mr. Buchanan nonetheless contends that only fees incurred up to the time of removal properly may be

---

[9] Mr. Buchanan's counsel says that one of the cited matters involved thousands of sales associates encompassing a California class, an Illinois state class, as well as a nation-wide collective class under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. Dkt. No. 25 at ECF 5.

1  included in the amount in controversy. He also argues that defendants' estimated fees are
2  overstated in any event.

3  The Court readily disposes of Mr. Buchanan's first contention. The Ninth Circuit has held
4  "that a court must include future attorneys' fees recoverable by statute or contract when assessing
5  whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794. Although
6  defendants cited *Fritsch* in their papers, Mr. Buchanan did not address it in his brief and did not
7  present convincing oral argument why *Fritsch*'s holding, which is binding upon this Court, does
8  not apply here.

9  Mr. Buchanan nonetheless argues that because his amended complaint contains a
10  representative PAGA claim, defendants' fee estimate must be apportioned among all aggrieved
11  employees, and only his pro rata share of the fees estimate properly may be included in the amount
12  in controversy. *See, e.g., Steenhuyse v. UBS Fin. Servs., Inc.*, 317 F. Supp. 3d 1062, 1073 (N.D.
13  Cal. 2018) (observing, in a PAGA action, that attorneys' fees cannot be attributed to a plaintiff
14  acting in a representative capacity, but must instead be allocated to the representative plaintiff on a
15  pro rata basis). Diversity jurisdiction, however, is measured at the time a lawsuit is filed. *See*
16  *generally Grup Dataflux,* 541 U.S. at 570-71. The PAGA claim having been added after
17  defendants removed this action, Mr. Buchanan has not presented this Court with any reason why
18  that claim properly may be considered for the purpose of determining whether diversity
19  jurisdiction existed at the time he filed the original complaint.

20  Mr. Buchanan has, however, asserted claims on behalf of a class and subclasses of
21  employees. The Ninth Circuit has held that in class action cases, where fees are sought pursuant
22  to a statute that permits any "successful party" (as opposed to a named plaintiff as a
23  "representative party") to recover fees, recoverable fees "cannot be allocated solely to [named]
24  plaintiffs for purposes of [the] amount in controversy." *Gibson v. Chrysler Corp.*, 261 F.3d 927,
25  942 (9th Cir. 2001) (finding amount in controversy not satisfied). Instead, fees must be divided
26  among all members of the class. *Id*. at 943. Similarly here, Mr. Buchanan asserts claims on
27  behalf of a putative class and seeks attorney's fees pursuant to statutes that allow fees to be
28  recovered by the "prevailing party" or by "an employee" or "any employee" injured as a result of

11

the alleged violations. S*ee, e.g.,* Cal. Labor Code §§ 226(e)(1), 1194(a); *see also Johnson v. America Online, Inc.*, 280 F. Supp. 2d 1018, 1025 (applying *Gibson* in a wage and hour suit alleging violations of, among other statutes, California Labor Code section 1194).

Defendants do not acknowledge or address the anti-aggregation rule of *Gibson*. Instead, they seem to analyze fees as if this were a single-plaintiff case, even though Mr. Buchanan asserts no claims solely for himself, but rather seeks to bring all asserted claims both for himself and on behalf of a putative class. Given the nature of Mr. Buchanan's complaint, the Court is not persuaded that defendants have met their burden of proof by analogizing the present action to cases involving only one or two plaintiffs. For example, while defendants' 15-hour estimate to "[i]nvestigate Plaintiff's allegations and draft the Complaint" *might* be reasonable for a single-plaintiff matter, in presenting that estimate, defendants have not provided the Court with a basis to assess whether that estimate properly accounts for *Gibson* or the fact that fees must be allocated among class members. Indeed, defendants have offered no estimate as to the size of the putative class; and, there is no indication in the record about the potential size of any class, except that Mr. Buchanan alleges that there are "at least hundreds" of individuals who meet the class definition. Dkt. No. 1-1 ¶ 41.

While courts may consider fees awarded in similar cases, here defendants cite parenthetically to the dockets of a single-plaintiff case and a two-plaintiff case, noting that the plaintiffs' attorneys claimed to have spent several hundred hours litigating those matters. Dkt. No. 1 at ECF 10. They also point out that in *Lippold v. Godiva Chocolatier, Inc.*, a representative PAGA action, the court observed that "attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case." No. C10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal., Apr. 15, 2010). While *Lippold* considered single-plaintiff wage and hour cases in determining that the defendant's fee estimate satisfied the amount-in-controversy requirement for diversity jurisdiction, other courts have declined to extend *Lippold* insofar as it did not apportion defendant's estimated fees among the PAGA employees the plaintiff sought to represent. *See, e.g., Taylor v. Interstate Group, LLC*, No. 15-cv-05462-YGR, 2016 WL 861020, at *6-7 (N.D. Cal., Mar. 7, 2016).

As noted above, defendants estimate Mr. Buchanan will incur past and future attorneys'

12

fees of $197,607. Assuming—based on Mr. Buchanan's allegation that the class comprises "at least hundreds" of individuals—that there are at least 200 putative class members, if each member's pro rata share of fees was $197,607, then the total recovery of attorneys' fees would have to be 200 times that amount, or a whopping $39,521,400.[10] *See Taylor*, 2016 WL 861020, at *8 (applying the same formula); *see also Snow v. Watkins and Shepard Trucking, Inc.*, No. DC CV 18-2206-DMG-(SPx), 2019 WL 1254571 at *5 n.2 (E.D. Cal., Mar. 18, 2019) (noting that for purposes of traditional jurisdiction in class action cases, fees must be assessed on a *pro rata* basis). Such an amount is not only implausible, but also entirely speculative, inasmuch as defendants have presented no evidence of the potential class size, much less evidence of fees in that amount for similar class action cases. *Cf. Lyon v. W.W. Grainger, Inc.*, No. C10-00884 WHA, 2010 WL 1753194, at *5 (N.D. Cal., Apr. 29, 2010) (concluding that defendant presented sufficient evidence of awards and settlements of attorneys' fees from similar *class action* lawsuits.). Accordingly, the Court concludes that defendants have not met their burden to prove, by a preponderance of the evidence, that Mr. Buchanan's pro rata share of fees for the entire action will total at least $48,165.76 for purposes of satisfying the jurisdictional threshold.

### III. CONCLUSION

Based on the foregoing, the Court finds that defendants have not met their burden of establishing that the amount in controversy exceeds the jurisdictional threshold under 28 U.S.C. § 1332(a). Because the Court lacks subject matter jurisdiction over this case, it does not reach the parties' arguments regarding Mr. Buchanan's standing to pursue at least the PAGA claim. This matter is remanded to the Santa Clara County Superior Court.

**IT IS SO ORDERED.**

Dated: July 23, 2019

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[10] Conversely, if the Court were to divide the estimated fees of $197,607 among 200 putative class members, each member's pro rata share would be only $988.04.

13